Argued 11 February; decided 15 April; rehearing denied 8 July, 1901.

## BROWN v. WHITTINGTON.

[64 Pac. 649.]

PRINCIPAL AND SURETY—PAYMENT—INDEMNITY.

1. Where a surety on a note, which the maker failed to pay when due, gave the payee sufficient money to satisfy the note, with the understanding that it should not be considered as a payment, but merely as an indemnity against loss, and that the payee should prosecute an action against the maker in his own name, but at the expense and for the use and benefit of the surety, such indemnification was not a payment, so as to destroy the payee's right of action against the maker.

CONVEYANCE TO RELATIVES—BURDEN OF PROOF AS TO GOOD FAITH.

2. Where a conveyance between relatives is attacked as fraudulent, the burden is upon the defendants to show that the property was sold in good faith and for a valuable consideration: *Bank of Colfax* v. *Richardson*, 34 Or. 519, approved.

From Coos: J. C. FULLERTON, Judge.

This is a suit by James C. Brown and B. C. Shull against W. W. Whittington and wife to cancel a conveyance of real property from the defendant W. W. Whittington to his wife on the ground that it is void as to creditors. On October 5, 1889, Whittington purchased and took in his own name a deed for one hundred and sixty acres of land in Coos County, upon which he has since resided with his family. On April 12, 1890, he purchased of the plaintiff Brown one lot in Myrtle Point for $200, giving his note therefor, due two years after date, and received from Brown a bond for a deed. When the note fell due, Whittington was unable to pay it, and gave Brown a new note for $250, in which the plaintiff Shull, at his solicitation, joined as surety. Thereupon Brown, at Whittington's request, made a deed of the lot to Shull, which was afterwards placed of record. On the same day, and immediately after the execution of the note, Whittington deeded his farm, which was practically all the property he owned, to his wife, for an expressed

consideration of $1.00. When the $250 note became due, Whittington refused to pay it, whereupon Shull deposited the amount due with Brown, with an understanding and agreement that Brown should prosecute an action on the note in his own name against Whittington, the principal, and should pay over to Shull any money he might be able to collect. In pursuance of this agreement, Brown commenced an action against both Whittington and Shull on March 18, 1893, and on May 1 following recovered a judgment against them for the face of the note and interest. Thereafter execution was issued on the judgment, and the property Whittington had previously conveyed to his wife was levied upon and sold to Brown. This sale was confirmed May 18, 1895, and a sheriff's deed made to Brown on April 15, 1897. Four days later this suit was commenced by Brown and Shull jointly to set aside the deed from Whittington to his wife as fraudulent and void as to creditors, and especially as to Shull. The complaint sets out in detail the facts heretofore stated. The answer denies that the deed from Whittington to his wife was without consideration, or made for the purpose of hindering, delaying, or defrauding creditors, and alleges that in 1888 Mrs. Whittington was the owner of a farm in Jackson County, which she sold for $3,000, with which her husband purchased the premises in controversy, but by mistake the deed was made in his name; that she did not discover the error until April, 1892, when she immediately demanded that it be corrected, and the property conveyed to her. The answer also alleges the execution by Brown of a deed to Shull for the Myrtle Point lot, and that it was received by Shull to secure him from liability on Whittington's note, with the agreement that, if Whittington was not able to pay the note at maturity, Shull would take the lot, and make the payment himself. The reply put in issue the new matter alleged in the answer,

and upon trial a decree was rendered in favor of plaintiffs, from which the defendants appeal.     Affirmed.

For appellants there was a brief over the name of *Hall & Hall*, with an oral argument by *Mr. John F. Hall.*

For respondents there was a brief and an oral argument by *Mr. S. H. Hazard.*

Mr. Chief Justice Bean, after stating the facts, delivered the opinion of the court.

1.   It is insisted at the outset that the plaintiffs can not recover, because the complaint admits that the note upon which judgment against Whittington and Shull was recovered by Brown was paid in full by Shull before the commencement of the action thereon.   But this contention is not supported either by the allegations or the proof.   The complaint alleges that prior to the commencement of the action Shull gave Brown sufficient money to satisfy the note, with the understanding and agreement that it should not be considered as a payment, but that Brown should prosecute an action thereon in his own name, at the expense and for the use and benefit of Shull; and the testimony is to the same effect.   This was no more than Shull could have compelled Brown to do.   Mr. Brandt says : " It is settled by a long-continued and unvarying current of authorities that the surety may, by a suit in chancery, after the debt becomes due, and before he pays it, compel the creditor to proceed to collect the debt from the principal, provided he indemnify the creditor against loss from a fruitless suit against the principal ": 1 Brandt, Sur. (2 ed.), § 238.   See, also, 24 Am. & Eng. Ency. Law (1 ed.), 798.

2.   The remaining issue involve mere questions of fact, and a detailed discussion of the testimony is unnecessary. It is sufficient that, after careful examination, we are of the opinion that the conclusions of the court below are abundantly supported by the evidence.   The conveyance from Whittington to his wife, made at the time and under the circumstances stated, imposed upon the defandants the burden of showing that it was made in good faith, and for a valuable consideration (8 Am. & Eng. Ency. Law (1 ed.), 765; Wait, Fraud. Conv. (3 ed.), § 301; *Marks* v. *Crow*, 14 Or. 382 (13 Pac. 55); *Bank of Colfax* v. *Richardson*, 34 Or. 518 (75 Am. St. Rep. 664, 54 Pac. 359); *Horton* v. *Dewey*, 53 Wis. 410, 10 N. W. 599); and this they have failed to do.

The contention is that in 1888 Mrs. Whittington was the owner of a farm in Jackson County, which she sold for $3,000, and that the proceeds thereof were invested in the land in controversy.   The Jackson County land was deeded to Mrs. Whittington by her husband, without consideration ; whether as a gift or for other purposes is not clear from the testimony.   Indeed, the testimony in reference to the entire transaction is indefinite and unsatisfactory.   But, whatever may have been the real fact in reference to the matter, the Coos County land was purchased by Whittington, and the title taken in his own name.   He was afterwards allowed and permitted to sell a portion thereof, mortgage the remainder, and otherwise deal with it as his own, until after one of his neighbors, relying on the apparent fact that he was the owner, became surety for him on the note to Brown.   It would be manifestly inequitable and unjust under such circumstances to permit the conveyance, as against such surety, to stand, unless clearly shown by the evidence to have been made and received in good faith.

The contention is also made that at the time Shull

became surety for Whittington he took a deed to the Myrtle Point lot, with the understanding and agreement that, if Whittington did not pay the note at maturity, he would keep the lot, and make the payment himself. But this position is not supported by the testimony. Brown, Shull, and Phillips—all the parties present at the execution of the note and deed except Whittington—testify that no such agreement was made or understanding had. Their testimony is, in effect, that Shull refused to accept the deed to the lot; and the latter says that it was never delivered to him, but that Brown caused it to be placed of record. On August 5, 1893, Shull, acting under the advice of an attorney, made and forwarded to Whittington a deed purporting to reconvey the lot to him, and Whittington has ever since retained the same. It is also suggested that, even if the conveyance from Whittington to his wife was voluntary, and without consideration, it is not void, because he was solvent at the time. But the evidence shows that it practically conveyed all his property. What little, if any, he may have retained, consisted of a few head of stock and his interest in the Myrtle Point lot. It follows from these views that the deed from Whittington to his wife is void as to the plaintiffs, and must be set aside. But, since the plaintiffs have offered in their complaint to permit the defendants to redeem from the effects of the sheriff's sale as if the time allowed by law for the redemption had not expired, a decree will be entered allowing them sixty days from the entry of the mandate in the court below in which to do so.

AFFIRMED.